United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 16, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 05-20630

**BERNARD WHITE,**

**Plaintiff-Appellant,**

**versus**

**OMEGA PROTEIN CORPORATION; OMEGA PROTEIN INC.,**

**Defendants-Appellees.**

**Appeal from the United States District Court
for the Southern District of Texas
(4:03-CV-3632)**

Before JONES, Chief Judge, and WIENER and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Bernard White contests the summary judgment awarded his former employer, Omega Protein Corporation, against his claims under the Age Discrimination and Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA). **AFFIRMED.**

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Omega's business involves catching and processing menhaden to sell as fish meal and oil. In 1998, White, then 50 years old, was hired as a vice president by business acquaintance Joseph von Rosenberg, Omega's president and CEO. White was to manage Omega's governmental affairs, investor relations, and public affairs. Governmental affairs was White's primary responsibility, as any political or regulatory actions that might jeopardize Omega's fishing activities were of critical importance.

Although White was given a high level of responsibility and autonomy during his first few years, several incidents caused von Rosenberg to question White's performance. First, in 2001, despite White's opposition, New Jersey passed legislation banning Omega from fishing in its waters (New Jersey incident).

Then, in 2002, Omega was caught unaware by an impending Mississippi public regulatory hearing to consider restricting Omega's Mississippi fishing grounds (Mississippi incident). After engaging a law firm, Omega ultimately defeated this proposed restriction; but, it disclosed the incident as a possible adverse outcome in its quarterly public reporting. White's governmental-affairs responsibilities were reduced after the Mississippi incident. (This reduction occurred in September 2002, shortly after White's return to full-time status, after approximately six months of cancer treatment and recovery.)

Finally, in 2003, Alabama passed a regulation restricting a portion of Omega's fishing grounds (Alabama incident). Omega recouped most, but not all, of these grounds.

White was terminated by von Rosenberg in 2003. Concomitantly, White was offered, and accepted, the opportunity to remain with Omega as an independent consultant under direct supervision. Because he was no longer an Omega employee, White no longer received employee benefits.

## II.

A summary judgment is reviewed *de novo*, applying the same standards as the district court. *E.g.*, **Keelan v. Majesco Software, Inc.**, 407 F.3d 332, 338 (5th Cir. 2005). Such judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c); *see*, *e.g.*, **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact (material fact issue) exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party". **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). In reviewing a summary judgment, all justifiable inferences are drawn in favor of the nonmovant. *E.g.*, **Bodenheimer v. PPG Indus., Inc.**, 5 F.3d 955, 956 (5th Cir. 1993).

3

A.

White contends his termination was age discrimination. In reviewing the summary judgment against White's ADEA claim based on circumstantial evidence, the **McDonnell Douglas** burden-shifting framework is employed. *E.g.*, **Patrick v. Ridge**, 394 F.3d 311, 315 (5th Cir. 2004) (citing **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973)). For summary-judgment purposes, a material fact issue would preclude such judgment against White.

Pursuant to this framework, White must present a *prima facie* case of discrimination, which, under ADEA, requires him to establish he: (1) is a member of the protected class (over 40 years old); (2) was qualified for his position; (3) was discharged; and (4) was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of age. *E.g.*, **Russell v. McKinney Hosp. Venture**, 235 F.3d 219, 223-24 (5th Cir. 2000) (citation omitted).

A *prima facie* case creates a rebuttable presumption of unlawful employer discrimination. *E.g.*, **Patrick**, 394 F.3d at 315. To rebut this presumption, the employer must articulate a legitimate, nondiscriminatory reason for its decision. **Id.** If it does so, the presumption of discrimination falls away; the employee must then show the employer's putative legitimate, nondiscriminatory reason was merely a pretext for discrimination. **Id.**

4

Whether White presented a *prima facie* case is a point of much contention between the parties. In any event, he fails to show, for summary-judgment purposes, that Omega's proffered nondiscriminatory reasons for his termination were mere pretext.

Omega maintains White's termination was, *inter alia*, due to the New Jersey, Mississippi, and Alabama incidents, which illustrated his inadequacy in his critical governmental-affairs role. In attempting to create a material fact issue on pretext, White contends: the incidents were either *not* serious, or *not* his fault; his immediate rehire as an independent consultant shows he was qualified; and, at his termination meeting, von Rosenberg told him he was "too old and tired for the job".

Concerning the alleged too-old-and-tired comment, White asserts the district court erred in refusing to consider it. The comment was first mentioned by White in his deposition. The district court refused to consider the alleged comment because it was *not* mentioned until 18 months after White's termination; it was *not* alleged in his complaint (even as twice amended), his sworn EEOC memorandum, or his documentation of his termination meeting. Relying on **Seshadri v. Kasraian**, 130 F.3d 798 (7th Cir. 1997), the district court, while recognizing it "must construe all facts in favor of [the] [p]laintiff", concluded it was "not required to accept as true a statement that no reasonable person would

5

believe". ***White v. Omega Protein Corp.***, 390 F. Supp. 2d 604, 609 (S.D. Tex. 2005).

We need *not* decide whether this belatedly-claimed comment should have been considered by the district court. Even considering it in our *de novo* review, White's summary-judgment evidence of pretext does *not*, in the light of the "same-actor inference" adopted in ***Brown v. CSC Logic, Inc.***, 82 F.3d 651 (5th Cir. 1996), create a requisite material fact issue. When the same person is responsible for hiring and terminating an individual, who was already a member of the AEDPA-protected class when hired, there is an inference that age was *not* the reason for the termination. *See id.* at 658 ("[c]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, [i]t hardly makes sense to hire workers from a group one dislikes ... only to fire them once they are on the job" (quoting ***Proud v. Stone***, 945 F.2d 796, 797 (4th Cir. 1991)) (internal quotation marks omitted)).

Moreover, "[t]he fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference". *Id.* (citation omitted). As noted, White was hired at age 50 by von Rosenberg, and was terminated five years later, also by von Rosenberg, who was then 44.

Further, White does *not* dispute the occurrence of the New Jersey, Mississippi, and Alabama incidents. Nor does he dispute

6

the reduction in his responsibilities. Finally, although White was rehired by Omega, it was in a significantly-less-autonomous consulting capacity.

In sum, White does *not* create a material fact issue on whether Omega's proffered reasons for terminating his employment were pretext for age discrimination. Therefore, summary judgment was proper against his ADEA claim. *See id.* at 656-58 (applying same-actor inference, and holding plaintiff failed to meet evidentiary burden on pretext issue, even where employer's alleged comments "impl[ied] that [the employer] believed [the employee's] age was affecting his job performance"); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) ("It is 'possible for a plaintiff's evidence to permit a tenuous inference of pretext yet be insufficient to support a reasonable inference of discrimination.'" (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000))).

### B.

White also maintains his termination wrongfully interfered with his employment benefits, in violation of ERISA. *See* 29 U.S.C. § 1140. Because White fails to create a material fact issue regarding Omega's proffered reasons for his termination, the summary judgment against his ERISA claim was also proper. *See Unida v. Levi Strauss & Co.*, 986 F.2d 970, 979-80 (5th Cir. 1993) (holding, to recover under ERISA, the plaintiff must show the

employer had the "specific intent" of interfering with plaintiff's ERISA benefits).

III.

For the foregoing reasons, the judgment is

***AFFIRMED.***