United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

───────────────

No. 02-10850
c/w No. 03-10322

───────────────

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff-Appellee,**

**versus**

**UNITED ENERGY PARTNERS, INC., ET AL.,**

**Defendants,**

**RICHARD A. QUINN; SCOTT W. TUCKER,**

**Defendants-Appellants.**

─────────────────────────────────────────

**Appeal from the United States District Court
for the Northern District of Texas
(3:98-CV-218-R)**

─────────────────────────────────────────

Before SMITH, BARKSDALE, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In these consolidated appeals, Richard A. Quinn and Scott W. Tucker contest the underlying summary judgment, injunction, and other aspects of the judgment entered against them, arising out of their investment solicitation and related activities with United Energy Partners, Inc. Essentially for the reasons stated by the

───────────────

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court, as briefly discussed below, the judgment is **AFFIRMED**.

## I.

Quinn was, among other things, chief executive officer and 90 percent shareholder of United Energy, which was in the business of drilling oil and gas wells; Tucker was executive vice president and ten percent shareholder. Quinn and Tucker sold working interests in United Energy wells to at least 285 investors, raising approximately $7.5 million.

The Securities and Exchange Commission filed this action against United Energy, Quinn, and Tucker in 1998, claiming knowing false and misleading statements in selling securities, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78b, and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q.

Quinn and Tucker were charged with misrepresenting the uses of investors' funds by failing to disclose, among other things, that half of the money raised was used for United Energy's operations (despite statements in the offering memoranda that all funds raised would be spent on drilling).

The district court: appointed a special master to represent United Energy; granted partial summary judgment for the SEC on its claims against Quinn and Tucker but took no action on the claims against United Energy; enjoined Quinn and Tucker from further

2

violation of the securities laws; ordered them to disgorge, jointly and severally, the $7.5 million; awarded the SEC pre-judgment interest of approximately $2 million; and imposed a $110,000 civil penalty each against Quinn and Tucker.

## II.

Quinn and Tucker challenge the summary judgment, the injunction, the disgorgement order, the pre-judgment interest, and the penalty.

## A.

A summary judgment is reviewed *de novo*, applying the same standard as the district court. *E.g., Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001). Such judgment is proper if the movant demonstrates there is no material fact issue and that it is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

The summary judgment was proper. For example, the offering memoranda represented that the total funds raised would be spent on completion of the wells and did not disclose that part of those funds would be given to United Energy or to its employees as commission. Although Quinn and Tucker dispute raising $7.5 million, they admitted doing so in their answer.

3

Quinn and Tucker contend the SEC was not entitled to judgment because the undisputed facts did not establish scienter, but it is obvious that the summary judgment record showed they acted with intent to defraud. For example, they were aware that the stated drilling costs were double the anticipated costs.

## B.

Quinn and Tucker's being enjoined from further violations of the federal securities laws is proper if "the inferences flowing from defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions". *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir.), *cert. denied*, 454 U.S. 1124 (1981). Injunctive relief is reviewed for abuse of discretion. *E.g., SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978).

There was no abuse of discretion. The district court ruled that Quinn and Tucker knowingly violated the securities laws and found that Quinn stated his intention to return to the securities business (even though Quinn asserts he would only do so if he could be "in compliance").

## C.

Concerning the $7.5 million disgorgement order, Quinn and Tucker claim disgorgement should instead be based only on the much smaller amount they received through their employment with United Energy. Claiming they do not have sufficient funds to disgorge

4

$7.5 million, Quinn and Tucker further contend that ordering them to do so is a penalty, contrary to the purpose of disgorgement. They also claim that the district court: should have offset against the disgorgement order the amounts spent on legitimate business expenses; and should not have ordered them to disgorge funds jointly and severally, because the amount each received from their involvement with United Energy was clearly determined. The equitable decision to order disgorgement is reviewed for abuse of discretion. *E.g., SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993).

There was no abuse of discretion. The $7.5 million raised is a reasonable estimate of the profits received by fraud. What Quinn and Tucker received from their *employment* with United Energy is not determinative; likewise, their inability to pay is irrelevant. Disgorgement deprives wrongdoers of ill-gotten gains; and a person remains unjustly enriched by what was illegally received, whether he retains the proceeds of his wrongdoing. *E.g., SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000).

In addition, although some courts have offset legitimate business expenses against a disgorgement amount, *e.g., SEC v. Thomas James Associates, Inc.*, 738 F. Supp. 88, 95 (W.D.N.Y. 1990), "the overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses". *SEC v. Kenton Capital, Ltd.*, 69 F. Supp.2d 1, 16

5

(D.D.C. 1998) (citing **SEC v. Hughes Capital Corp.**, 917 F. Supp. 1080, 1086 (D.N.J. 1996), *aff'd* 124 F.3d 449 (3d Cir. 1997)). Moreover, as the SEC acknowledges, Quinn and Tucker are to receive a set-off for amounts repaid to investors or collected by the special master. Lastly, joint and several liability is appropriate in securities cases where, as here, individuals collaborate or have close relationships in engaging in illegal conduct. *E.g.,* **SEC v. Hughes Capital Corp.**, 124 F.3d 449, 455 (3d Cir. 1997).

### D.

Quinn and Tucker next challenge the pre-judgment interest on the disgorgement amount, claiming: they did not have use of the full $7.5 million and relinquished their assets to the special master; there was no wronged party to compensate through such interest; and the SEC did not settle with Quinn and Tucker despite their willingness to do so. An award of pre-judgment interest is reviewed for abuse of discretion. *E.g.,* **SEC v. First Jersey Securities, Inc.**, 101 F.3d 1450, 1476 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997); **Wolf v. Frank**, 477 F.2d 467, 479 (5th Cir.), *cert. denied*, 414 U.S. 975 (1973).

There was no abuse of discretion. For example, the court, in its discretion, reduced the IRS underpayment rate of interest by half from the date when Quinn and Tucker turned over their assets to the special master; and the parties' not reaching settlement does not bear on the award.

6

Finally, Quinn and Tucker contest the imposition of third-tier civil monetary penalties of $110,000 against each of them. Such penalties are proper if: the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons". 15 U.S.C. § 78u(d)(3)(B)(iii); 17 C.F.R. § 200.1001 (raising the maximum penalty per violation to $110,000). The district court found both requirements met. The imposition of civil penalties is reviewed for abuse of discretion. *R & W Technical Serv. Ltd. v. CFTC*, 205 F.3d 165, 177 (5th Cir. 2000).

Quinn and Tucker contend: no investor suffered substantial losses and any risk of loss from the failure of the wells was disclosed; they did not receive the full $7.5 million they were ordered to disgorge, therefore a civil fine amounts to a double penalty; and, under the facts of this case, the penalty serves no public interest. In the light of the district court's findings, there was no abuse of discretion.

## III.

Essentially for the reasons stated by the district court, the judgment is

*AFFIRMED*.

7